*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

| | |
|---|---|
| ALICE KUTSUSHI, )<br>)<br>        Plaintiff, )<br>) | |
|         v. ) | Civil Action No. 04-2016 (JGP) |
| )<br>GOVERNMENT OF THE )<br>DISTRICT OF COLUMBIA, )<br>)<br>        Defendant. ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on defendant's **Motion to Dismiss or in the Alternative for Summary Judgment, and Motion to Stay Proceedings [8]**, and plaintiff's **Memorandum in Opposition [9]**. Upon consideration of the record, the law, and for the reasons stated below, the Court finds that defendant's motion to dismiss should be granted.

This suit arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. (2005).[1] The IDEA seeks "to ensure that all children with disabilities have available to them a free and appropriate public education ['FAPE'] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). A FAPE "means special education and related services that . . . have been provided at public expense, under public

---

[1] Citations in this opinion are to the IDEA provisions currently in effect. Amendments to the IDEA became effective on July 1, 2005, subsequent to the time period at issue in this suit, but do not differ from the provisions in effect during the relevant time period in any way material to this suit.

supervision and direction, and without charge; . . . meet the standards of the [local] educational agency ['LEA']; . . . include an appropriate preschool [through] secondary school education . . . ; and . . . are provided in conformity with the individualized education program" ("IEP"). 20 U.S.C. § 1401(9).

An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised" and includes, in relevant part:

> a statement of the child's present levels of academic achievement and functional performance[;] a statement of measurable annual goals, including academic and functional goals[;] a description of how the child's progress toward meeting the annual goals . . . will be measured and when periodic reports on the progress the child is making . . . will be provided;. . . a statement of the special education and related services and supplementary aids and services. . . to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child[;] an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in . . . activities[;] a statement of any individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of the child[; and] the projected [beginning date,] anticipated frequency, location, and duration of those services and modifications.

20 U.S.C. § 1414(d)(1)(A). The IEP is created by the "IEP team", sometimes also known as the multi-disciplinary team ("MDT"), which must include: (1) the disabled child's parents; (2) at least one of the child's general education teachers, if the child is participating in general education; (3) at least one of the child's special education teachers or providers; (4) a representative of the LEA; and (5) an individual qualified to interpret the student's evaluation results. 20 U.S.C. § 1414(d)(1)(B).

The IDEA establishes procedural safeguards, including the opportunity for the guardian "to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). When such a complaint has been filed, "the parents or the [LEA] involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted

by the . . . [LEA]." 20 U.S.C. § 1415(f)(1)(A).

On August 23, 2004, plaintiff, guardian of minor I.B., filed an administrative complaint regarding the provision of education to I.B. by the District of Columbia Public Schools ("D.C.P.S."). Compl. ¶ 14.  The parties then participated in due process hearings on September 27, 2004 and October 1, 2004. *Id.* ¶ 15.  On October 19, 2004, the hearing officer issued a determination which ordered D.C.P.S. to convene an I.E.P. meeting and make certain changes to I.B.'s I.E.P.  This determination established that plaintiff was the prevailing party. *Id.* Exh. A.

Pursuant to 20 U.S.C. § 1415(i)(2), plaintiff filed a complaint with this Court seeking review of various aspects of the hearing officer's decision.  In particular, plaintiff alleged that the hearing officer erred by: (1) "not providing I.B. with a remedy . . . , i.e., an appropriate placement at The Maryland School for The Blind;" (2) failing to rule on all the allegations contained in the hearing request; (3) "finding that the transportation time for I.B. was two hours each way and this was excessive transportation time which rendered the placement inappropriate because there was no evidence in the record to support this finding;" (4) ordering that an additional IEP meeting be held rather than ordering a remedy at the due process hearing; and (5) finding that the student was not registered with D.C.P.S. until November 2003, that D.C.P.S. tried to schedule an IEP meeting in March 2003 but that the parent was unable to attend, and that the student's aide took class notes for him which were later translated into Braille by a teacher. Compl. ¶¶ 33, 35, 37, 39, 41. Plaintiff sought a declaratory judgment that the hearing officer had failed to provide a remedy, failed to rule on all the issues raised by the due process complaint, and erred in the findings of fact mentioned above. *Id.* at 12-13.  Plaintiff also sought to have the Court order D.C.P.S. to place, transport, and fund the student at The Maryland School For The Blind. *Id.* ¶ 12.

Defendant asserts that this matter is moot, that the Court therefore lacks subject matter jurisdiction, and that this case should thus be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Mem. Supp. Mot. Dismiss at 4-5. Defendant points out that the another due process hearing was held on January 5, 2005, and another determination issued on January 7, 2005 which ordered D.C.P.S to place and fund I.B. in the residential program at The Maryland School For The Blind, including transportation costs for the weekends. *Id.* at 3-4, Exh. 1. Defendant asserts that plaintiff has received the requested relief, and the matter is therefore moot. *Id.* at 6.

Plaintiff opposes defendant's motion to dismiss. Plaintiff states that the relief sought in her August 2004 administrative complaint was a placement in the "*day school* component" of The Maryland School For The Blind but that the hearing officer denied this placement because he erroneously determined that it would involve an unacceptably long daily commute. Opp'n at 1-2 (emphasis in original). Plaintiff asserts that

> In light of the hearing officer's refusal to place [I.B.] in the *day school program* . . . [I.B.] was forced to spend the fall of 2004 in the inappropriate school placement he had been in for two years. This caused [I.B.] to decompensate/regress to the point that by December 2004 the individuals working with him concluded he required a *residential* placement . . . . Plaintiff . . . then filed a new request for an administrative due process hearing for the purpose of obtaining a residential placement at The Maryland School For The Blind. . . . [T]his relief was granted.

*Id.* at 2 (emphasis in original).

Plaintiff asserts that the issue she has raised is whether the hearing officer erroneously found the day school placement to be inappropriate based on his mistaken assessment of the length of the commute, and that this issue is not mooted by the hearing officer ordering I.B. to be placed in the residential program, "[b]ecause the goal is for [I.B.] at some point to transition from the *residential* portion of the program . . . to the *day* school program." *Id.* at 3.

4

Article III of the Constitution limits the Court's jurisdiction to "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 601 (1988). However, claims are not moot if "the conduct . . . originally complained of is capable of repetition, yet evading review." *Id.*, 484 U.S. at 318, 108 S.Ct. at 601 (quotations omitted).

The instant matter appears to be moot because plaintiff has received the relief requested in her second complaint. Neither party has challenged the appropriateness of that relief, and there is thus no reason to think that the relief requested in her first complaint would be appropriate. Furthermore, plaintiff has failed to argue that D.C.P.S.'s behavior is capable of repetition. In fact, the portion of the complaint she seeks to preserve deals only with the hearing officer's determination, not D.C.P.S.' behavior. Furthermore, plaintiff has not argued that if the issue were to arise again, it would evade review. The Court cannot foresee what would prevent plaintiff from receiving an appropriate change of placement through the administrative process if it became necessary. The Court cannot anticipate what facts might arise in the future. The mootness doctrine seeks to avoid a judicial determination on issues which "are no longer live or [where] the parties lack a legally cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The reason for such a rule is obvious where, as here, plaintiff has failed to cite any legal authority whatsoever. Accordingly, for the reasons stated above, this matter shall be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because it is moot and the Court lacks jurisdiction.

**DATE: March 27, 2006**　　　　　　　　　　　　　　　　　**JOHN GARRETT PENN**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**